UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦

**MARTIN and ANNETTE WISNIEWSKI, on
behalf of their son Aaron Wisniewski,**

                              **Plaintiffs,**

                   **-v-**                                                     5:02-CV-1403

**THE BOARD OF EDUCATION OF THE
WEEDSPORT CENTRAL SCHOOL
DISTRICT and RICHARD MABBETT,
Superintendent of Schools,**

                              **Defendants.**
✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦

APPEARANCES:
O'HARA & O'CONNELL
STEPHEN CIOTOLI, Esq., of Counsel
220 Salina Meadows Parkway
Suite 100
Syracuse, New York 13212-4505
Attorneys for Plaintiffs

BOND, SCHOENECK & KING, PLLC
JONATHAN B. FELLOWS, Esq., of Counsel
SUZANNE O. GALBATO, Esq., of Counsel
One Lincoln Center
Syracuse, New York 13202-1355
Attorneys for Defendants

**Chief Judge Norman A. Mordue:**

## MEMORANDUM-DECISION AND ORDER

### INTRODUCTION

      Presently before the Court is defendants' motion for summary judgment (Dkt. No. 38).

Upon being charged with threatening a teacher, Aaron Wisniewski ("Aaron"), then a student at

Weedsport Middle School, was afforded a Superintendent's Hearing pursuant to New York

Education Law, § 3214(3)(c)(1). The Hearing Officer found that Aaron had circulated through

the internet a threat to kill one of his teachers and recommended suspension for a semester. Defendant Board of Education of Weedsport Central School District ("Board") accepted the Hearing Officer's findings and imposed the recommended suspension. Plaintiffs claim that defendants' actions violated Aaron's rights under the First Amendment, 42 U.S.C. § 1983, and the New York Education Law.

For the reasons set forth below, the Court grants defendants' motion for summary judgment and dismisses the federal causes of action on the merits. The Court declines to retain jurisdiction over the state law claims and dismisses them without prejudice.

## BACKGROUND

**Facts**

Unless otherwise indicated, the facts set forth in this section are undisputed based on the complaint, defendants' Statement of Material Facts, plaintiffs' response thereto, and the record.

In spring 2001, Aaron, who was 15 years old, was an eighth grade student at Weedsport Middle School ("School"), in the Weedsport Central School District ("District"). Aaron was present when, on March 29, 2001, School personnel visited his classroom to discuss school violence. They advised the students that all threats of violence would be taken seriously.

In early April 2001 Aaron created and attached to the instant messaging feature of his family computer an icon depicting a gun pointing to a head, a bullet leaving the gun, and blood splattering from the head. It bore the words "Kill Mr. VanderMolen." Mr. VanderMolen was Aaron's English teacher. Aaron attached the icon[1] to instant messages he forwarded from his

---

[1] For simplicity, the Court refers to both the graphic (of the gun, bullet, head, and blood) and the accompanying words "Kill Mr. VanderMolen" as "the icon."

home computer to about 15 friends, including classmates.  He did not forward it to Mr. VanderMolen.

The icon circulated from Aaron's home computer to this group of friends for about three weeks.  On April 25, 2001, another student, Chad McDeid ("Chad"), who had seen the icon, reported it to Mr. VanderMolen.  The next day, Mr. VanderMolen viewed the icon and reported it to the District administration.

The following day, April 27, 2001, Linda Rice, the School Principal, and defendant Richard Mabbett, the District's Superintendent of Schools, met with Aaron and his parents.  Also present was Lieutenant Lamphere from the Cayuga County Sheriff's Department, which the District had notified of the incident.  At the meeting, Aaron acknowledged that he had created the icon.  After the meeting, Principal Rice suspended Aaron from school for five days on the ground that he "made threatening icons and language directed towards a teacher over a home computer and sent it to several students." [2]

**Administrative Proceeding**

On April 30, 2001, the District sent plaintiffs notice of a Superintendent's Hearing pursuant to section 3214(3)(c)(1), charging Aaron with threatening Mr. VanderMolen on April 26, 2001, based on a threatening message sent through the internet to other students.  On May 16, 2001, the Sheriff's Department determined that Aaron did not constitute a "realistic threat" to Mr.

---

[2] Plaintiffs claim that prior to the five-day suspension, the District failed to provide either Aaron or his parents with the required notice, nor did it provide them with an informal conference with the principal or the right to ask questions of the complaining witnesses.  *See* N.Y. Educ. Law § 3214(3)(b)(1).  Plaintiffs also complain that Aaron was removed from the District's baseball team without a hearing.  The reason given was his violation of the behavioral rules stated in the athletic handbook.

-3-

VanderMolen or other School officials and closed its investigation. Norman J. Lesswing, Ph.D., a psychologist retained by plaintiffs to provide a professional threat assessment, concluded that Aaron did not pose a threat to Mr. VanderMolen or other School officials.

The Superintendent's Hearing took place on May 29, 2001, before an attorney, Lynda VanCoske, Esq., whom the Board had designated as Hearing Officer. Aaron was represented by counsel, who cross-examined the District witnesses and called witnesses on Aaron's behalf. At the close of the hearing, briefs were submitted to the Hearing Officer by counsel for Aaron and the District.

In its memorandum to the Hearing Officer, the District argued, *inter alia*, that the District treated the icon as a threat; that it was justified in doing so; that there was nothing about the icon that identified it as a joke or anything other than a serious statement; that the information possessed by the District did nothing to contradict the plain message of the icon; that the District's reaction was reasonable in light of the violence prevalent in schools today; that Aaron should have foreseen that his icon would be taken seriously as a threat; that a few days previously in a classroom presentation, School personnel had advised the students, including Aaron, that threats would be taken seriously; that Aaron was not discriminating about who received the icon and should not have been surprised that School officials learned of it; that it caused disruption in the School; and that Mr. VanderMolen felt threatened and did not take the icon as a joke. The District contended that the icon was a threat and thus not entitled to First Amendment protection. *See Watts v. United States*, 394 U.S. 705, 707 (1969).

Aaron's counsel submitted a memorandum to the Hearing Officer setting forth two basic contentions: (1) that under the circumstances no reasonable person could seriously consider

-4-

Aaron's icon to be a real threat to kill Mr. VanderMolen; and (2) that it would be unconstitutional to discipline Aaron for the icon because it was protected by the First Amendment.  Arguing that the icon was not a true threat and thus enjoyed First Amendment protection, counsel addressed the factors examined by courts in determining whether a statement is a true threat, citing *Watts*, 394 U.S. at 707, and *Lovell v. Poway Unified Sch. Dist.*, 90 F.3d 367, 372 (9th Cir. 1996).  These factors include the context of the statement, its conditional nature, and the hearers' reactions.  With respect to the context of the statement, counsel pointed to the following facts: there was no past conflict between Aaron and Mr. VanderMolen; Aaron's prior disciplinary record reflected only minor infractions; a search of Aaron's locker and backpack was negative; and Aaron did not communicate the threat to Mr. VanderMolen but circulated it outside of school among a group of friends.  Counsel also refers to evidence that Aaron and at least one of his friends thought the icon was a joke.

On June 6, 2001, the Hearing Officer issued a recommendation which included the following findings:

> Aaron is unquestionably bright and articulate. His testimony that the icons and message were a joke was unconvincing, and he provided no explanation, justification for context for these icons being construed as jokes. Common sense dictates that without context or explanation, the threatening words such as "Kill Mr. VanderMolen" are not a joke. Mr. VanderMolen did not take these words as a joke. Mr. VanderMolen testified that he was scared, concerned, and felt sick to his stomach upon reading the message. Until the issue was resolved, he asked to be removed from teaching Aaron's class because he felt uncomfortable teaching the class and was concerned about his and his six month old child's safety. The District honored that request. Ms. Rice testified that Mr. VanderMolen appeared anxious and fearful.

> In addition, on approximately March 29, 2001, Ms. Rice, with the social worker and director of guidance, visited every class and spoke to students about the topic of threats. They advised students that any threats must be communicated to adults and that these threats will not be considered jokes. Aaron admits being present at that meeting. He heard Ms. Rice explain that threats were no joke, yet he still created the threat and icons after Ms. Rice's visit.

The Hearing Officer observed that student conduct occurring outside of school can properly be the subject of school discipline. She noted "the realities of school violence" and the legislative and administrative responsibilities placed on schools in the face of threats. She found that the District "had a legitimate concern and reason to believe these words and icons were anything but a joke." After setting forth the actions of the District in response to the threat, the Hearing Officer found that they were disruptions which justified disciplining Aaron in school.

The Hearing Officer also noted that the Sheriff's Department concluded that the icon was a joke, and that Dr. Lesswing concluded that Aaron posed no actual threat and that the message was intended to stay in a social context. The Hearing Officer, however, stated that intent was "irrelevant." She found that "[s]ubstantial and competent evidence exists that Aaron engaged in the act of sending a threatening message to his buddies, the subject of which was a teacher" and concluded:

> As a result of the foregoing, I conclude Aaron did commit the act of threatening a teacher, in violation of page 11 of the student handbook, creating an environment threatening the health, safety and welfare of others, and his actions created disruption in the school environment.

She recommended that the District suspend Aaron for the first semester of the 2001-2002 school year.

The parties agreed that the Hearing Officer's recommendations would be considered by the Board rather than by defendant Superintendent Mabbett. On July 24, 2001, the Board met to consider the matter. It heard presentations from plaintiffs' attorney and the District's attorney.

The Board accepted the Hearing Officer's decision on September 24, 2001. Plaintiffs did not seek further review, although they were entitled to appeal by petition to the Commissioner of Education pursuant to New York Education Law § 310(7). The Commissioner's decision would

-6-

then be subject to judicial review pursuant to Article 78 of New York's Civil Practice Law and Rules.

The District suspended Aaron from the first semester of the 2001-2002 academic year, effective September 26, 2001. The District arranged for Aaron to receive tutoring, which began one week later, on October 4, 2001. Plaintiffs claim that the tutoring was not timely commenced and was inadequate.

**Complaint**

The complaint before this Court sets forth five causes of action. In the first, plaintiffs claim that the icon did not constitute a true threat but rather was protected speech under the First Amendment. As such, they contend, the District's actions amounted to illegal retaliation against Aaron for his protected speech and deprived him of his First Amendment rights.

The second and third causes of action set forth claims under 42 U.S.C. § 1983 against the District and Superintendent Mabbett, respectively. These causes of action claim that defendants failed to train school staff in threat assessment, which failure resulted in Aaron's suspension in violation of his First Amendment rights.

The fourth cause of action asserts that the Board had a duty under section 3214 of the New York Education Law to conduct a thorough review of all record evidence before determining whether to suspend Aaron; that the Board had knowledge of the Sheriff's Department's and Dr. Lesswing's conclusion that Aaron did not pose a threat to anyone; and that despite that knowledge, the Board "knowingly, intentionally and/or negligently" suspended Aaron in violation of its duties under section 3214.

The fifth cause of action claims that the District failed to comply with state law because it did not provide Aaron with timely and adequate alternative education. The complaint seeks

compensatory damages for mental and emotional anguish and all other actual damages, as well as costs and attorneys' fees.

## THE MOTION

In moving for summary judgment, defendants first contend that as a matter of law the icon is a true threat and thus not protected by the First Amendment. They next urge that plaintiffs' claims are barred by collateral estoppel stemming from the factual findings at the Superintendent's Hearing. In addition, defendants argue that all claims against defendant Superintendent Mabbett must be dismissed inasmuch as he did not participate in the decision to suspend Aaron, and in any event he is protected by qualified immunity. And finally, they argue for dismissal of the state law claims on various grounds.

## APPLICABLE LAW

**Standard on Summary Judgment Motion**

A party moving for summary judgment bears the initial burden of demonstrating that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56 (c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the Court, viewing the evidence in the light most favorable to the nonmovant and drawing all reasonable inferences in its nonmovant's favor, determines that the movant has satisfied this burden, the burden then shifts to the nonmovant to adduce evidence establishing the existence of a disputed issue of material fact requiring a trial. *See Ramseur v. Chase Manhattan Bank*, 865 F.2d 460, 465 (2d Cir.1989). If the nonmovant fails to carry this burden, summary judgment is appropriate. *See Celotex,* 477 U.S. at 323.

**First Amendment**

The First Amendment protection of free speech does not extend to certain types of speech,

including threats of violence. *See Watts v. United States*, 394 U.S. 705, 707 (1969). The Second Circuit has observed that First Amendment protection is forfeited where "the threat on its face and in the circumstances in which it is made is so unequivocal, unconditional, immediate and specific as to the person threatened, as to convey a gravity of purpose and imminent prospect of execution[.]" *United States v. Malik*, 16 F.3d 45, 51 (2d Cir. 1994) (quotation marks and citation omitted) (rejecting First Amendment defense by criminal defendant charged with mailing threatening letters, 18 U.S.C. § 876); *see Porter v. Ascension Parish Sch. Bd.*, 393 F.3d 608, 616 (5th Cir. 2004) (defining "true threat" as "serious expression of an intent to cause present or future harm," quoting *Doe v. Pulaski County Special Sch. Dist.*, 306 F.3d 616, 622 (8th Cir. 2002)).

In addressing whether a statement was constitutionally-protected political hyperbole or a true threat, the Supreme Court in *Watts* considered the context of the statement, whether it was conditional in nature, and the reaction of the listeners. 394 U.S. at 708; *see Lovell v. Poway Unified Sch. Dist.*, 90 F.3d 367, 372 (9th Cir. 1996) (stating that alleged threats should be considered in light of their entire factual context). Some courts have considered whether a reasonable person hearing the statement would interpret it as a serious threat, *see Doe*, 306 F.3d at 622, whereas other courts have asked whether the speaker would reasonably anticipate that the hearer would interpret the statement as a threat. *See Lovell*, 90 F.3d at 372. In *Malik*, the Second Circuit stated that the test of what constitutes a threat is "an objective one – namely, whether an ordinary, reasonable recipient who is familiar with the context of the [statement] would interpret it as a threat of injury." 16 F.3d at 49 (quotation marks and citation omitted); *accord, Cohn v. New Paltz Cent. Sch. Dist.*, 363 F. Supp.2d 421, 435 (N.D.N.Y. 2005), *appeal dismissed in part*, 2006 WL 522102 (2d Cir.). The *Malik* court added that "proof of the effect of the alleged threat upon the addressee is highly relevant." *Id.*

-9-

Proof that the speaker lacked the intent or ability to carry out an alleged threat does not preclude a finding that it was a true threat. *See Porter*, 393 F.3d at 616; *Doe*, 306 F.3d at 625, n.3; *see also United States v. Kelner*, 534 F.2d 1020, 1027 (2d Cir. 1976) (stating that a threat "may affront such important social interests that it is punishable absent proof of a specific intent to carry it into action" in criminal prosecution under 18 U.S.C. § 875(c) for transmitting a threat in interstate commerce). Provided that the speaker intentionally communicated the alleged threat to someone, it is not determinative that he did not communicate it directly to its object. *See Porter*, 393 F.3d at 616-18; *Doe*, 306 F.3d at 624-25.

**Collateral Estoppel**

Collateral estoppel, also referred to as issue preclusion, means that "when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." *Leather v. Eyck*, 180 F.3d 420, 424 (2d Cir. 1999) (internal quote omitted). It is settled that when a state administrative body acting in a judicial capacity resolves disputed issues of fact properly before it which the parties had an adequate opportunity to litigate, "federal courts must give the agency's factfinding the same preclusive effect to which it would be entitled in the State's courts." *University of Tennessee v. Elliott*, 478 U.S. 788, 799 (1986).

New York State courts give quasi-judicial administrative fact-finding preclusive effect where there has been a full and fair opportunity to litigate, provided that the issue sought to be precluded is identical to a material issue necessarily decided in the administrative proceeding.[3]

---

[3] "The proponent of collateral estoppel must show identity of the issue, while the opponent must demonstrate the absence of a full and fair opportunity to litigate. *Jeffreys v. Griffin*, 1 N.Y.3d 34, 39 (2003)

-10-

*See Locurto v. Giuliani*, ___F.3d___, ___, 2006 WL 1130906, *8 (2d Cir. 2006); *Jeffreys v. Griffin*, 1 N.Y.3d 34, 39 (2003); *Ryan v. New York Tel. Co.*, 62 NY2d 494, 499-500 (1984). Where these requirements are met, school suspension proceedings under New York Education Law are entitled to preclusive effect in subsequent civil actions. *See, e.g., Livolsi v. Hicksville Union-Free Sch. Dist.*, 693 N.Y.S.2d 617 (2d Dep't 1999) (holding that, where Commissioner approved five-day suspension under N.Y. Educ. Law § 3214(3)(b)(1), student and other plaintiffs were barred from relitigating the propriety of the suspension in a civil lawsuit).

## DISCUSSION

**Collateral Estoppel**

Defendants argue that the application here of the doctrine of collateral estoppel warrants summary judgment in their favor on the First Amendment and section 1983 claims. As noted above, federal courts give preclusive effect to New York State quasi-judicial administrative fact-finding, provided that the basic requirements of collateral estoppel are met, that is, that there has been a full and fair opportunity to litigate, and the issue sought to be precluded is identical to a material issue necessarily decided in the administrative proceeding. *See University of Tennessee*, 478 U.S. at 799; *Locurto,* 2006 WL 1130906 at *8. This Court finds that these requirements are met in the instant case.

It is clear that the Superintendent's Hearing in this matter was a quasi-judicial proceeding. *See* N.Y. Educ.Law, § 3214(3)(c)(1).[4] The Hearing Officer was designated and the proceeding

---

[4] New York Education Law, § 3214(3)(c)(1) provides in part:

> No pupil may be suspended for a period in excess of five school days unless such pupil and the person in parental relation to such pupil shall have had an opportunity for a fair hearing, upon reasonable notice, at which such pupil shall have the right of representation by counsel, with the right to question witnesses against such pupil and to present

-11-

was properly handled in accordance with section 3214(3)(c)(1).  Further, the record establishes as a matter of law that plaintiffs had a full and fair opportunity to litigate the issues in that hearing. It is undisputed that Aaron was represented by the same lawyer who represents plaintiffs in the instant action.  Counsel called witnesses on Aaron's behalf and cross-examined the District's witnesses.  Plaintiffs' effort to challenge the legitimacy of the Superintendent's Hearing and thus to distinguish *University of Tennessee*, based on matters such as the number of witnesses called or the length of the proceeding, is unavailing.  478 U.S. at 799.

The Court turns to consider whether the issue sought to be precluded here is identical to a material issue necessarily decided in the administrative proceeding.  The Hearing Officer made specific factual findings regarding the context of the icon.  She found that both the object of the icon (Mr. VanderMolen) and a third party (the District) viewed it as a threat and that the District "had a legitimate concern and reason to believe these words and icons were anything but a joke." She found that Aaron had been present when students were advised that threats would not be treated as jokes.  She found that Aaron provided "no explanation, justification or context for these icons being construed as jokes" and rejected his testimony that the icon was a joke.  And she made the ultimate factual finding that Aaron "did commit the act of threatening a teacher."

> witnesses and other evidence on his behalf. Where a pupil has been suspended in accordance with this subdivision by a superintendent of schools, district superintendent of schools, or community superintendent, the superintendent shall personally hear and determine the proceeding or may, in his discretion, designate a hearing officer to conduct the hearing. The hearing officer shall be authorized to administer oaths and to issue subpoenas in conjunction with the proceeding before him. A record of the hearing shall be maintained, but no stenographic transcript shall be required and a tape recording shall be deemed a satisfactory record. The hearing officer shall make findings of fact and recommendations as to the appropriate measure of discipline to the superintendent. The report of the hearing officer shall be advisory only, and the superintendent may accept all or any part thereof. An appeal will lie from the decision of the superintendent to the board of education who shall make its decision solely upon the record before it. The board may adopt in whole or in part the decision of the superintendent of schools....

This finding was the basis for her recommendation, adopted by the Board, that Aaron be suspended. Clearly the question of whether Aaron's icon was a threat was a material factual issue necessarily decided in the administrative proceeding; it formed the basis of the decision to suspend him.

Moreover, the administrative finding that Aaron's icon was a threat is an ultimate factual finding on an issue which is identical to the issue sought to be precluded in this action, *i.e.*, whether the icon was a threat. As set forth above, the administrative body explicitly based its decision on the following factors: the content of the icon; the context of the icon; the reaction of its object (Mr. VanderMolen); the reaction of a third party (the School); the reasonableness of the recipients' reactions; and the fact that Aaron had reason to know the recipients would view it as a threat. These factors are identical to factors bearing on whether a statement is a threat such that it is not protected by the First Amendment. *See Watts*, 394 U.S. at 708 (considering the context of the statement, its conditional nature,[5] and the reaction of listeners); *see also Doe*, 306 F.3d at 625; *Lovell*, 90 F.3d at 372; *Malik*, 16 F.3d at 49.

The Court rejects plaintiffs' contention, based on *Pappas v. Giuliani*, that the findings of fact in the Superintendent's Hearing are not entitled to preclusive effect. 118 F. Supp.2d 433 (S.D.N.Y. 2000), *affd. on other grounds*, 290 F.2d 143 (2d Cir. 2002). The district court decision in *Pappas* concerned whether administrative determinations of law are entitled to issue preclusion in a section 1983 action; it did not question the preclusive effect of administrative determinations of fact. In contrast, defendants in the case at bar rely on the administrative determinations of fact,

---

[5] It cannot be reasonably argued that the words "Kill Mr. VanderMolen" are conditional in nature.

-13-

not of law.[6]

Thus, the administrative finding that the icon was a threat, based on the context, hearers' reaction and other relevant factors, is entitled to preclusive effect in the present lawsuit. As a result, plaintiffs cannot prevail on their First Amendment claim or their claims under 42 U.S.C. § 1983, both of which are based on the First Amendment.[7] The first three causes of action must be dismissed.

**First Amendment**

In any event, as a matter of law, Aaron's icon constituted a true threat unprotected by the First Amendment. As is clear from the factual recitation above, virtually all material facts are undisputed. On their face, the words "Kill Mr. VanderMolen" and the accompanying graphic can not be viewed as anything but an unequivocal, unconditional, immediate threat of injury specific as to the person threatened, such as conveys a gravity of purpose and imminent prospect of execution. *See Malik*, 16 F.3d at 51. Likewise, the surrounding circumstances – including the effect of the icon on Mr. VanderMolen and School officials, Aaron's awareness of the School's position that a threat was not a joke, the absence of any factor to suggest that the icon was a joke, and the general increase in school violence – establish that an ordinary, reasonable recipient who is familiar with the context of the icon would interpret it as a serious threat of injury. *See id.*; *see generally Doe*, 306 F.3d at 625; *Lovell*, 90 F.3d at 372. Plaintiffs do not point to any material

---

[6] Indeed, the Hearing Officer in the case at bar made no express legal determination regarding First Amendment protections, nor do defendants rely on any legal determination.

[7] Plaintiffs argue in their Memorandum of Law in opposition to summary judgment that Aaron was denied due process in connection with his five-day suspension. The section 1983 causes of action are not, however, based on this claim.

-14-

questions of fact regarding these circumstances.

There is no merit to plaintiffs' assertion that questions of fact exist due to the conclusions of the Sheriff's Department and Dr. Lesswing that Aaron did not pose an actual threat and did not intend to carry out the threat. It is well established that lack of intention or ability to carry out a threat is not relevant. *See, e.g., Porter*, 393 F.3d at 616; *Doe*, 306 F.3d at 625, n.3; *Kelner*, 534 F.2d at 1027. Further, to the extent that plaintiffs attempt to argue that Aaron's conduct was purely out-of-school conduct, the undisputed evidence establishes that the icon was a threat to kill a teacher at the School, that Aaron circulated it among classmates for three weeks; that he had no reasonable expectation that it would not come to the attention of School officials; that when it did so it caused a substantial disturbance at the School; that it is reasonable that it should have done so; and that Aaron had reason to expect that it would do so.

Thus, on this ground as well, the first three causes of action must be dismissed.

**Qualified Immunity**

Government officials performing discretionary functions enjoy a qualified immunity, shielding them from civil damages liability as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated. *See Anderson v. Creighton*, 483 U.S. 635, 638 (1987). Whether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action "generally turns on the objective legal reasonableness of the action assessed in light of the legal rules that were clearly established at the time it was taken." *Id.* at 639 (citations and internal quotation marks omitted).

Even if the icon did not legally constitute an unprotected threat, under all of the circumstances discussed above, Superintendent Mabbett could reasonably have concluded that it did and that his actions were reasonable. As such, he is entitled to qualified immunity.

-15-

**State Law Causes of Action**

Having dismissed all federal claims, the Court in its discretion declines to retain supplemental jurisdiction over the state claims. They are dismissed without prejudice.

## CONCLUSION

It is therefore

ORDERED that defendants' motion for summary judgment is granted; and it is further

ORDERED that Causes of Action One, Two and Three of the Complaint are dismissed on the merits; and it is further

ORDERED that Causes of Action Four and Five are dismissed without prejudice.

IT IS SO ORDERED.

June 20, 2006
Syracuse, New York

_____
Norman A. Mordue
Chief United States District Court Judge